**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **3:15-CR-113** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **MARC ACCARDI,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

## I.   BACKGROUND

On August 21, 2020, defendant Marc Accardi filed, *pro se*, an Emergency Motion for Compassionate Release and for a Modification in Sentence under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), and request or transfer to home confinement related to his 180-month sentence due to the COVID-19 pandemic and his underlying medical conditions, namely, hypertension, obstructive severe sleep apnea, vitamin D deficiency, and morbid obesity (BMI of 55.9), which he alleges put him at increased risk from COVID-19. (Doc. 41). Accardi is currently confined in prison at LSCI-Allenwood, Low Security Camp, located in White Deer, Pennsylvania, and he seeks the court to release him to home confinement with his mother in Scranton, Pennsylvania. Accardi alleges that the pandemic along with his chronic medical conditions constitute an extraordinary and compelling

1

reason for a reduction in his sentence and his compassionate release from prison to home confinement. Accardi states that he has served 5 years towards his sentence and that his release date is January 26, 2029. He alleges that he does not pose a danger to anyone's safety or to the community's safety.

Accardi attached Exhibits to his motion, namely Exhibits A-L. (Doc. 41 at 26-57).

With respect to the exhaustion issue, Accardi submits a copy of his July 7, 2020 request to Warden White, (Doc. 41, Ex. A), and contends that the court has jurisdiction to decide his motion on the merits since more than 30 days have now passed since he submitted his request for compassionate release to the Warden due to COVID-19 and his medical conditions. Accardi also attached as Exhibits to this motion a copy of Warden White's July 22, 2020 response denying his administrative request for home confinement, as well as copies of his BOP medical records and copies of the courses he completed in prison with Certificates of Appreciation. Also, included with Accardi's Exhibits are letters from his grandmother, his aunt and from a friend in support of his request for release to home confinement. Accardi also submitted a diagram purportedly depicting the open dorm area of the camp to show that social distancing is not possible with three inmates assigned to a cube.

In the Warden White's denial of Accardi's Inmate Request for compassionate release, (Doc. 41 at 31-32), White explained why Accardi did

not qualify under BOP criteria and the criteria contained in Attorney General Barr's Memo as well as in the CARES Act. White stated, in part, that based on Accardi's sex offenses and the underlining facts of his case, including his possession of over 19,000 images of pictures on his cell phone of children engaging in sexually explicit conduct while he was on supervised release from a prior conviction for distribution and possession of child pornography, and "to prevent recidivism and to maximize public safety", he was "not appropriate for home confinement placement."

On September 9, 2020, the government filed its brief in opposition to Accardi's motion arguing that it should be denied on its merits, (Doc. 43), and filed, under seal, Accardi's BOP medical records, (Doc. 45 & Doc. 45-1 to 45-7).

After being granted an extension of time, on September 29, 2020, Accardi filed his reply brief with an attached letter from his bother in support of his request for release from prison. (Doc. 48).

In his motion, Accardi also makes an emergency request for a hearing regarding his instant motion stating that LSCI Allenwood had its first positive case of COVID-19. Accardi attached as an Exhibit to his motion a copy of Warden White's August 3, 2020 Memo to inmates stating that LSCI Allenwood had its first confirmed positive inmate case but indicating that it was discovered during the inmate's intake screening at the prison and that "exposure was limited." (Doc. 41 at 40). The Warden also re-emphasized the safety requirements that would be enforced at LSCI Allenwood.

3

Accardi's motion for compassionate release under §3582(c)(1)(A)(i), (Doc. 41), will be denied on its merits.[1]

## II.   DISCUSSION[2]

---

[1]To the extent that Accardi, who is proceeding *pro se*, is construed, based on his references, as seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, or is challenging the BOP's decision that he is not eligible for relief, it does not have authority to grant his request for relief and order the BOP to release him to home confinement. *See* United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). *See also* United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). *See also* 18 U.S.C. §3621 (the BOP is provided with the sole authority and discretion to designate the place of a defendant's confinement).

[2]On June 26, 2015, Accardi, age 48, pleaded guilty to receipt and distribution of child pornography, 18 U.S.C. §2252(a)(2). Accardi was sentenced to 180 months in prison to be followed by 10 years of supervised release. (Doc. 34). He was also sentenced to 12 months in prison to run consecutive to his 180-month sentence for violating the conditions of his supervised release in criminal case 3:CR-15-262. Further, Accardi was previously convicted for possession and distribution of child pornography in the United States District Court for the District of Columbia, case 1:09 CR 00009-1, and he was on supervised release, in the Middle District of Pennsylvania, for that offense at the time he committed his present offense.

Accardi is also required to register as a sex offender pursuant to the Sexual Offender Registration and Notification Act. *See* 42 U.S.C. §16901, *et seq.*

The court will first consider the exhaustion issue since it is a threshold matter. *See* United States v. Gadsden, 2020 WL 3871083, *1 (W.D. Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

No doubt that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)). "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, —— F.Supp.3d ——, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." *Id.* (citations omitted).

"Prior to petitioning a court for relief under §3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative

remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020). Thus, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**.'" United States v. Harris, 812 Fed.Appx. 106, 107 (3d Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A) (emphasis original). Further, "the [compassionate release] statute states that the defendant may file the motion thirty days after the warden receives his request." Id. (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.")).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, ——— F.Supp.3d ———, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

It is undisputed that since Accardi has submitted a request for compassionate release with the Warden based on his medical conditions and COVID-19, and 30 days has lapsed since he submitted his request, he can now proceed with his motion in this court since he exhausted his administrative remedies. *See* United States v. Hight, 2020 WL 5653487, \*5 (E.D. Pa. Sept. 23, 2020) (court held that "if a defendant requests that the warden grant him a transfer to home confinement under the CARES Act, the warden denies the request, and thirty days have elapsed since presenting the request to the warden, the Court finds that the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A) is satisfied.").

It is also undisputed that Accardi has the following medical conditions, obesity, obstructive sleep apnea, hypertension and Vitamin D deficiency. However, the government points out that Accardi's medical records indicate that his medical conditions are controlled, some with medication, and that his conditions are stable, and that his records indicate that he is receiving regular medical care at the prison.

As the court in United States v. Epstein, 2020 WL 2537648, \*2 (D.N.J. May 19, 2020), explained:

> Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. Dillon v. United States, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. §3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate

7

release for "extraordinary and compelling reasons." 18 U.S.C. §3582(c)(1)(A)(i).

The First Step Act, §3582(c)(1)(A)(i), provides in relevant part:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

  (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

Thus, "a defendant seeking a reduction in his sentence under the First Step Act ["FSA"] 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling

8

and extraordinary reasons exist to justify compassionate release.'" *Id.* (citation omitted).

The government argues that Accardi has failed to establish that even if his medical conditions constitute "extraordinary and compelling reasons", they do not support a reduction of his sentence, and that he has not met his burden to show that a reduction is warranted in light of the relevant §3553(a) factors.

The government states that the Sentencing Commission's "policy statement includes an application note that specifies the types of medical conditions that qualify as 'extraordinary and compelling reasons.'" (Doc. 43 at 15) (citing USSG §1B1.13, cmt. n.1(A)). However, as the court in Epstein, *id.* at *3, pointed out, "the Sentencing Commission had defined th[e] term ["compelling and extraordinary reasons"] as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act." (citing United States v. Rodriquez, —— F. Supp. 3d ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), §1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018)). In any event, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under §3852(c)(1)(A).'" *Id.* (citation omitted). "The Policy Statement provides that a

9

defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." *Id.* (citing U.S.S.G. §1B1.13, Application Note 1).

In the instant case, as in <u>Epstein</u>, *id.* at \*3, Accardi seeks compassionate release based on his medical conditions, as such, he "may show extraordinary and compelling reasons for release … where (1) '[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory),' or (2) he or she is[:] (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (citation omitted).

The court first addresses whether Accardi has demonstrated extraordinary and compelling reasons for compassionate release, under the FSA, based on his medical conditions.

"Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for 'extraordinary and compelling reasons'", and in general, "'extraordinary' means '[b]eyond what is usual, customary, regular, or common' and a 'compelling need' is a 'need so great that irreparable harm or injustice would result if it is not met.'" <u>United States v.</u>

Ramirez-Ortega, 2020 WL 485356, *3 (E.D. Pa. Aug. 18, 2020) (citations omitted). Although a "general fear of contracting COVID-19 while imprisoned at Allenwood Low does not represent an extraordinary and compelling reason warranting compassionate release", *id.*, if an inmate has recognized medical conditions that would put him at a greater risk to suffer severe complications if he did contract COVID-19, this may qualify as an "extraordinary or compelling reason" warranting his release from prison. *See* "People Who Are at Higher Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html.

Here, the government recognizes that Accardi has shown "extraordinary and compelling reasons" that may justify a sentence reduction based on his medical conditions since they appear to fall within one of the categories listed in the BOP policy statement. In its brief, (Doc. 43 at 19-20), the government states:

> [Accardi] suffers from obesity, hypertension, sleep apnea, and other medical problems that may make him more susceptible to, and place him in greater danger of, COVID-19. As noted above, FCC Allenwood Low is effectively treating Accardi for those medical conditions.

However, the government, (Id.), also states that while COVID-19 does not constitute an extraordinary and compelling reason,

> [t]hat does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under §3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, and this inmate

[i.e., Accardi] does, [footnote omitted] that condition or those conditions may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG §1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated.

The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. According to the BOP's website as of October 8, 2020, there was no current positive case of COVID-19 among inmates and staff at FCI Allenwood, Low, and one inmate and one staff had recovered from the virus.

The court notes that in Lackawanna County, Pennsylvania, where Accardi is seeking to be released on home confinement, there have been 2974 positive cases of COVID-19 and 217 deaths as of October 9, 2020. *See* Pa. Dept. of Health website.

Also, Accardi indicates in his motion that he can perform a job at Tully's restaurant if he is released from prison based on his training and educational courses he completed in prison notwithstanding his alleged physical limitations. (*See* Doc. 41 at 21).

Despite having have medical conditions which could be considered "extraordinary or compelling", Accardi's voluminous medical records for his chronic care treatment indicate that he is being properly treated for these conditions at LSCI Allenwood, (*see* Doc. 45 & Docs. 45-1 to 45-7), and that his conditions are controlled by medications. Additionally, Accardi's BOP Activates of Daily Living and Physical Self Maintain Scale indicate that he is capable of caring for himself in prison and that he does not have limitations in these regards. (*See* Doc. 45 at 3-4).

Also, Accardi does not allege that he was exposed to the COVID-19 virus at LSCI Allenwood, nor has he controverted with any evidence the substantial steps identified in the government's brief that the BOP is taking to protect the health and safety of both inmates and staff at the prison. Since the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff, including at FCI Allenwood, are stated in the government's brief, (Doc. 43 at 3-12), and are found in the BOP's websites cited in the brief, they are not repeated herein. *See* BOP website at: www.bop.gov/coronavirus/index.jsp. (*See also* August 5, 2020 BOP Memorandum COVID-19 Nine Phase Action Plan, Doc. 45 at 17-25, Doc. 45-1 at 1-2).

As the court in Epstein, *id.* at *6, concluded, "[m]ere 'speculation concerning possible future conditions does not constitute a 'compelling reason' for release." (citing United States v. Veras, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020); *see also* Raia, 954 F.3d at 597 ("[T]he mere

13

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

To the extent that Accardi's medical conditions, and the risks he faces due to the COVID-19 pandemic, constitute "extraordinary and compelling reasons", the court will consider his compassionate release based on weighing the applicable factors set forth in 18 U.S.C. §3553(a).

Under the FSA, the court is also required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" *Id.* at *3 (citing §3582(c)(1)(A)). As in Epstein, *id.*, the following factors in §3553(a)(1) and (2), apply to the present case:

     (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

     (2) the need for the sentence imposed—

         (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

         (B) to afford adequate deterrence to criminal conduct.

The undisputed factual background of Accardi's offense is detailed in the government's brief, (Doc. 43 at 20-21), as well as in the PSR, (Doc. 21 at 3-4), and the Warden's response to Accardi's request for release, (Doc. 41 at 32). In particular, as the government summarizes:

[Accardi] was convicted of receipt and distribution of child pornography. This was his second federal child pornography conviction. He was sentenced to 100 months in 2009 for possessing thousands of images of child pornography and distributing child pornography to others, and sentenced to 180 months in this case, again for receiving and distributing thousands of images of child pornography. He was also sentenced to 12-months in prison for his supervised release violation—to run consecutive to the 180-month sentence. In this case, he possessed more than 19,000 images of child pornography and the nature of those images were horrific, including sadistic abuse of children under age 12 and bestiality. He committed the instant child pornography offense while on supervised release for a previous child pornography offense. He stated at the time of his arrest that he is addicted to child pornography, and that he started looking for it and trading it shortly after he was released from prison for the earlier child pornography offense.

The court finds that the underlying conduct of Accardi's instant offense, which constitutes disturbing criminal conduct involving graphic child pornography, which has been a recurrent theme in his life, is very severe and clearly demonstrates that he poses a danger to the community. Accardi's conduct endangered the vulnerable minors as well as the safety of the community. As the government states in its brief, (Doc. 43 at 21), "Accardi would pose a grave danger to the community—especially young children—If he were to be released early." Accardi's attempt to minimize the seriousness of his conviction by alleging that he committed a "non-violent crime" that did not involve "violence of physical contact with minors", (Doc. 48 at 7), shows that he does not appreciate the seriousness of his offense and that he still presents a danger to the community.

15

Accardi has failed to establish that he is not a danger to the community. USSG §1B1.13(2). Thus, the court finds that Accardi committed a very serious crime involving vulnerable minors, and that he presents a danger to the community.

The court acknowledges the courses Accardi has taken in prison as well as the Certificates of Appreciation he has earned, however, his service of only 5 years towards his 180-month sentence in this case, to be followed by a 12-month sentence for his supervised release violation, is not sufficient time to reflect the seriousness of his offense. Thus, Accardi has served only one third of his 15-year sentence and the court finds that the substantial sentencing reduction which Accardi seeks in his motion compassionate release is inconsistent with the §3553(a) factors. *See* United States v. Pawlowski, 967 F.3d 327, 330-31 (3d Cir. 2020) (Third Circuit held that a district court did not abuse its discretion in denying compassionate release based, in part, on the amount of time remaining to be served in the inmate's sentence.). In particular, the court finds that "the need for [Accardi] to serve the remainder of his sentence still exists to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense'", and thus, "the section 3553(a) factors weigh against [his] release to home confinement." Epstein, *id.* at *3 (citing §3553(a)).

Moreover, the 180-month sentence imposed by the court on Accardi was a downward departure from his guidelines range. Based upon a total offense level of 34 and a criminal history category of III, Accardi's guideline

imprisonment range was 188 to 235 months. (Doc. 21 at 17). *See* Pawlowski, 967 F3d at 331 (Court stated that since defendant's "sentence was within the applicable Sentencing Guidelines range [it] is presumptively reasonable.") (citation omitted).

## III.   CONCLUSION

Based on the foregoing, Accardi's motion for compassionate release from prison and transfer to home confinement, under §3582(c)(1)(A)(i), related to his medical conditions and the COVID-19 pandemic, **(Doc. 41)**, is **DENIED ON ITS MERITS**. Insofar as Accardi is challenging the decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Accardi's emergency request for a hearing regarding his instant motion is **DENIED**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated: October 14, 2020**

15-113-01

17